Affirmed and Memorandum Opinion filed April 9, 2009








Affirmed and Memorandum Opinion filed April 9, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-07-00802-CR

____________

 

ALEJANDRO VASQUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No.  1072931

 



 

M E M O R A N D U M   O P I N I O N








Alejandro Vasquez was convicted of murder and sentenced to
confinement for seventy-five years in the Institutional Division of the Texas
Department of Criminal Justice, and assessed a $10,000 fine.  Vasquez
challenges his conviction and sentence, contending that (1) the evidence was
factually insufficient to support the verdict; (2) the trial court failed to
properly charge the jury on the burden of proof associated with extraneous
offenses and bad acts offered during the punishment phase of the trial; (3) the
trial court improperly admitted evidence of extraneous offenses and bad acts
during the punishment phase of the trial; and (4) he was denied the effective
assistance of counsel during both the guilt and punishment phases of his
trial.   We affirm.

Facts

At about 2:10 a.m. on June 13, 2006, Harris County Deputy
Sheriff J.  Burton received a dispatch about a weapons disturbance in the 5300
block of Dunnethead in western Harris County.  Upon arriving at the scene,
Deputy Burton met with the homeowner who had placed the call, and then
proceeded with his partner, Deputy Rusche, to the backyard of the home. 
Walking through the backyard, Deputy Burton discovered the complainant,
Christian Ventura Ferman, lying face down in the grass.  Upon closer
inspection, Deputy Burton observed blood on Ferman=s shirt, and what
appeared to be a bullet hole in his back.  Ferman was alive, but having
difficulty breathing.  Deputy Burton called for emergency medical services.  An
ambulance arrived and took Ferman to a hospital where he later died.  








As other arriving deputies began to secure and document the
crime scene, they discovered bullet holes in the fence of the homeCone between the
street and the backyard, and another at the rear of the yard.  Deputy James
Welsh was assisting Deputy Burton when he observed a passing car with several
young men inside.  When questioned, the young men stated that they had been a
block away on Cairnleigh Drive, the street behind the house where the shooting
occurred, when they heard several gunshots.  Not long after that, they saw a
silver Ford Expedition with its headlights off turn onto their street, and park
in a driveway.  One of the men recognized the Expedition as belonging to a
resident of the house where it was parked.  Detective Eric Clegg of the  Harris
County Sheriff=s Office also interviewed the individuals in the car. 
After hearing their descriptions, Detective Clegg and Deputy Welsh went to the
house on Cairnleigh to investigate.  Other Harris County deputies were already
at the residence.  Coincidentally, the residents of the home, located almost
directly behind the Dunnethead residence where Ferman had been shot, had also
called 9-1-1 when the shooting occurred.  A bullet had come through a window at
the rear of the Cairnliegh house, striking a wall.  Upon arriving at the house,
and seeing the silver Expedition parked out front, Deputy Welsh touched the
hood of the vehicle and noticed that it was still warm, indicating that the
vehicle had been driven recently.

The occupants of the Cairnleigh house gave consent for the
deputies to search the house in conjunction with their examination of the
bullet hole.  Deputies were unable to find the actual bullet that had broken
the window and struck the wall.  Detective Clegg and Deputy Welsh took turns
questioning the occupants= son, Enrique Ramirez.  Ramirez denied any
knowledge about the shooting, as well as having driven the Expedition that
night, although keys to the vehicle were later found in his possession.  With
the consent of Ramirez=s parents, the deputies searched the
Expedition and recovered two empty .45-caliber shell casings. 

Ramirez told the deputies that, earlier that night, he had
been down the street at his girlfriend=s house. 
Ultimately, Ramirez admitted to having removed the missing bullet from the wall
and hiding it in his room.  Ramirez told the deputies where he had hidden the
bullet, but denied firing a gun or being around a gun that night.  At this
point, Detective Clegg obtained Ramirez=s consent to have
his hands placed in plastic bags in order to preserve them for firearms-residue
analysis.  Detective Clegg also arranged for a deputy to take Ramirez to the
Sheriff=s Department
offices for further questioning.








After spending several hours working at both houses
involved in the shooting, Detective Clegg and Deputy Henry Palacios began
working their way down Cairnleigh Drive, looking for more clues, and asking
neighbors for information, until they reached the residence that Ramirez had
indicated was his girlfriend=s house.  After knocking at the door, they
were invited in by an older Hispanic female.  As they stood in the doorway,
Detective Clegg received a phone call from Sergeant James Parker of his
department=s homicide division.  Sergeant Parker relayed that,
while being questioned about the incident, Ramirez had named another
individual, the appellant, as the shooter.  Detective Clegg quickly conveyed
this information to Deputy Palacios, who then determined that the home they had
entered belonged not to Ramirez=s girlfriend, but to the alleged gunman,
the appellant.  The Hispanic female who had answered the door brought Detective
Clegg and Deputy Palacios to the appellant, who immediately surrendered.  The
appellant acknowledged that he knew why the deputies were there.  They then
handcuffed him and led him outside where they sat him down on the lawn.

Deputy Palacios obtained consent from the appellant=s brother, the
owner of the residence, to conduct a search.  Upon searching the appellant=s bedroom, Deputy
Palacios discovered a loaded Kimber .45-caliber handgun in a backpack.  The
appellant=s hands were then preserved for residue analysis. 
Later, deputies discovered a .22-caliber handgun, a shotgun, and over 200
rounds of ammunition for the various weapons.  Deputies also recovered several
.45-caliber shell casings from the street in front of the appellant=s house. 
Crime-scene investigators recovered these items, and photographed the appellant=s bedroom.  The
appellant was then taken to the Harris County Sheriff=s Office where he
made a custodial statement that was video-recorded.    

Detective Clegg later learned that a third individual,
Oscar Chavarria, was also involved in the shooting.  After Chavarria was
located, he agreed to be interviewed by investigators at the sheriff=s office. 
Chavarria told investigators that, although he worked with Ramirez and the
appellant, he did not know them well.  He  told the investigators that he had
gone to the appellant=s home after work that night to smoke
marijuana with the appellant and Ramirez.  He also admitted to being present in
the Expedition when the shooting occurred.

Ultimately all three individuals were charged with the
murder of Ferman.  The appellant was tried by a jury, convicted, and sentenced
to  seventy-five years= confinement in the Institutional Division
of the Texas Department of Criminal Justice, and assessed a $10,000 fine.  This
timely appeal followed.








Analysis

In four issues on appeal, Vasquez challenges his conviction
and sentence contending that (1) the evidence presented during the guilt phase
was factually insufficient to support the verdict; (2) the trial court failed
to properly charge the jury on the State=s burden of proof
related to evidence of extraneous offenses and bad acts offered during the
punishment phase of the trial; (3) the trial court improperly admitted evidence
of extraneous offenses and bad acts during the punishment phase; and (4) he was
denied the effective assistance of counsel during both the guilt and punishment
phases of his trial.

A.      Factual
Sufficiency

In his first issue on appeal, the appellant argues that the
evidence presented at trial was factually insufficient to support his
conviction.  Specifically, he contends that the prosecutor failed to prove the
required element of intent, either to kill or cause serious bodily injury,
beyond a reasonable doubt.  Further, he contends that the trial evidence
demonstrated that he merely intended to scare Ferman and his friends, thereby
undermining the jury=s verdict.

When reviewing a factual‑sufficiency challenge, we
view all the evidence neutrally. Prible v. State, 175 S.W.3d 724, 730B31 (Tex. Crim.
App. 2005); Newby v. State, 252 S.W.3d 431, 435 (Tex. App.CHouston [14th
Dist.] 2008, pet. ref=d).  We especially discuss and examine the
specific evidence that the appellant contends undermines the jury=s verdict. Newby,
252 S.W.3d at 435; see also Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).  We may set aside the verdict only if the evidence is so weak
that the verdict is clearly wrong and manifestly unjust, or if the verdict is
against the great weight and preponderance of the evidence.  Watson v. State,
204 S.W.3d 404, 414B15 (Tex. Crim. App. 2006); see also
Newby, 252 S.W.3d at 435. We may disagree with the jury=s conclusions;
however, we must avoid substituting our judgment for that of the jury,
particularly in matters of credibility.  Drichas v. State, 175 S.W.3d
795, 799 (Tex. Crim. App. 2005); see also Newby, 252 S.W.3d at 435. 








A person commits the offense of murder if he intentionally
or knowingly causes the death of an individual.  Tex. Penal Code Ann. ' 19.02(b)(1)
(Vernon 2003).  A person may also commit murder by intending to cause serious
bodily injury and committing an act clearly dangerous to human life that causes
the death of an individual.  Id. ' 19.02(b)(2)
(Vernon 2003).

In the present case, the appellant argues that there was no
direct evidence of his intent to either kill or cause serious harm to Ferman. 
The appellant contends that the only direct evidence on this point was his
custodial statement and the testimony of Chavarria.  In his recorded statement,
the appellant said that on the night of the shooting he had seen some unknown
males walking around his neighborhood in dark clothing.  Because he suspected
that these men had burglarized his brother=s car sometime
before, he enlisted Ramirez and Chavarria to go look for them.  In his recorded
custodial statement, the appellant claimed that when he and Ramirez discovered
the unknown menCa group which included FermanCthe appellant
fired his gun up in the air in an attempt to scare them.  The appellant stated
that he did not intend to shoot any of them, and was unaware that any of them
had been shot.

A firearm, such as the handgun used in this shooting, is a
deadly weapon.  Id. ' 1.07(a)(17)(A) (Vernon 2003 & Supp.
2008).  When Aa deadly weapon is used in a deadly manner, the
inference is almost conclusive that [the appellant] intended to kill. . . .@  Adanandus v.
State, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (quoting Godsey v. 
State, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986)); Arnold v. State,
234 S.W.3d 664, 672 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  In
the absence of other evidence, the jury may presume the intent to kill from the
use of a deadly weapon.  Arnold, 234 S.W.3d at 672.  The accused may
rebut this presumption with other evidence.  Thompson v. State, 521
S.W.2d 621, 622 (Tex. Crim. App. 1974); Munoz v. State, 932 S.W.2d 242,
245 (Tex. App.CTexarkana 1996, no pet.).








At trial, Chavarria testified that he had seen the group of
unknown men walking in the neighborhood while he was waiting to meet the
appellant and Ramirez after work.  Later, while they were standing outside the
appellant=s house, Chavarria told the appellant about seeing the
group of young men walking around the neighborhood.  According to Chavarria=s testimony, the
appellant then walked into this house and returned a few minutes later.  About
that time Ramirez pulled into the appellant=s driveway driving
the Expedition.  As he climbed into the vehicle next to Ramirez, the appellant
told Chavarria, AGet in.@  Chavarria
testified that the three of them drove around the neighborhood while Ramirez
pointed a  large flashlight out the window, looking for the group of men.  At
some point, according to Chavarria, Ramirez stopped the vehicle and said, AThere they go. 
There they go.@  The appellant then pulled out a pistol and handed it
to Chavarria, and then showed him how to pull the hammer back.  Chavarria
testified that he handed the pistol back to the appellant.  According to
Chavarria, as Ramirez pointed the flashlight out the window, the appellant drew
another pistol, reached across Ramirez, pointed the pistol out the window and
fired three or four shots.  Someone, Chavarria wasn=t clear who, then
said, AGo, go,@ and Ramirez
quickly drove away, heading to the appellant=s house.  Upon
arriving at the appellant=s house, Chavarria climbed out of the
Expedition while Ramirez and the appellant remained inside.  Chavarria
testified that, several minutes later, the appellant handed to him the handgun
that he had used in the shooting.  The appellant then asked him to take it into
the house and hide it in his bedroom.  Chavarria testified that he took the gun
into the house and put it inside a backpack in the appellant=s bedroom.  








The appellant argues that Chavarria=s testimony does
not prove that the appellant intended to kill or cause injury because Chavarria
could not have clearly seen where the appellant aimed the gun when firing it. 
The appellant points to Chavarria=s testimony that
he was sitting in the backseat of the Expedition, and that he ducked down with
his head between his knees when the appellant started shooting.  But Chavarria
stated that he did not duck down until after the first shot was fired.  Before
he ducked, Chavarria witnessed the appellant fire at least one shot out the
window.  Chavarria testified that the appellant did not shoot up in the air, or
down at the ground, but directly at the men outside the vehicle.  Firing a gun in the direction of an
individual is an act clearly dangerous to human life.  Forest v. State,
989 S.W.2d 365, 368 (Tex. Crim. App. 1999).

Next, the appellant argues that there was conflicting
evidence related to firearm residue.  At trial, William Davis of the Harris
County Medical Examiner=s Office testified that while Ramirez
tested positive for firearm residue on his hands, no residue was detected on
the appellant=s hands.  But Mr. Davis also testified that a negative
residue test result would not be unusual if the subject was tested more than
six hours after allegedly firing a weapon, as the residue will wear off over
time.  In this case, the appellant was not tested until more than six hours
after the shooting.  Any remaining doubt concerning who fired the weapon was
resolved by the appellant himself.  In his recorded custodial statement played
for the jury, the appellant repeatedly admitted to firing the gun.  Further,
the appellant stated that he was the only person to fire a gun that night.  As the trier of fact, the jury is the
sole judge of the credibility of the witnesses and the weight to be given to
their testimony. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999); Bargas v. State, 252 S.W.3d 876, 887 (Tex. App.CHouston [14th Dist.] May 13, 2008, no
pet.).  The jury was free to weigh the credibility of the appellant=s and Chavarria=s testimony, as well as the testimony
regarding the physical evidence. 

Even considering the evidence that appellant contends is
contradictory to the State=s case, we cannot say that the jury=s verdict in this
case was against the great weight and preponderance of the evidence.  Nor can
it be said that, in light of this evidence, the jury=s verdict was
manifestly unfair or unjust.  Consequently, the evidence was factually
sufficient to justify the jury=s verdict.  See Watson, 204 S.W.3d
at 414B15; Newby,
252 S.W.3d at 435. We overrule the appellant=s first issue.  

B.      Charge
Error in Punishment Phase








In his second issue, the appellant contends that the trial
court erred by omitting a reasonable-doubt instruction for extraneous offenses
during the punishment phase.  As a consequence, the appellant argues, it was
possible for the jury to base its assessed punishment on allegations of
extraneous offenses that were not proven beyond a reasonable doubt.

The State may offer punishment-phase evidence as to any
matter the court deems relevant to sentencing, including evidence of an
extraneous crime or bad act that is shown beyond a reasonable doubt to have
been committed by the defendant.  Tex. Code Crim. Proc. Ann. art. 37.07 ' 3(a) (Vernon 2006
& Supp. 2008).  When evidence of extraneous offenses or bad acts is
admitted during the punishment phase, the trial court is required to instruct
the jury sua sponte on the reasonable-doubt standard of proof.  Huizar v.
State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000).

The review of alleged charge error is a two‑step
process.  Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); Green
v. State, 233 S.W.3d 72, 78 (Tex. App.CHouston [14th
Dist.] 2007, pet.  ref=d).  First, we examine the jury charge to
see if the trial court erred.  Abdnor, 871 S.W.2d at 731B32; Green,
233 S.W.3d at 78.  Second, if we find that the trial court erred, we must
determine if the harm is sufficient to warrant reversal. Abdnor, 871
S.W.2d at 731B32; Green, 233 S.W.3d at 78.  The degree of
harm necessary for reversal depends on whether the error was preserved.  Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); Green, 233
S.W.3d at 78.         

The appellant contends and the record confirms that, during
the punishment phase of the trial, the State introduced evidence alleging that
the appellant was involved in gang activity, and that he possessed both illegal
drugs and drug paraphernalia.  However, the trial court failed to instruct the
jury on the State=s burden of proof under article 37.07. 
Accordingly, the trial court erred by failing to give the required instruction.
 See Huizar, 12 S.W.3d at 484.








But the appellant did not request the instruction, nor did
he object to the trial court=s omission.  In the absence of a request
or objection, jury charge error does not require reversal unless it causes Aegregious harm.@  Id. at
484B85; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), overruled on other
grounds, Rodriguez v. State, 758 S.W.2d 787 (Tex. Crim. App. 1988). 
Egregious harm is a difficult standard and must be proven on a case‑by‑case
basis.  Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). 
The actual degree of harm must be determined in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole.  Almanza, 686 S.W.2d at
171.  Egregious harm is present whenever a reviewing court finds that the error
made the case for punishment clearly and significantly more persuasive. Saunders
v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).  Errors resulting in
egregious harm are those which affect the very basis of the case, deprive the
defendant of a valuable right, or vitally affect a defensive theory.  Almanza,
686 S.W.2d at 172; Green, 233 S.W.3d at 78. 

At trial, the State showed evidence suggesting that the
appellant participated in gang activity or, at a minimum, glorified such
activity.  Specifically, the State showed photographs taken in the appellant=s bedroom, which
was decorated with posters from the films Good Fellas and Scarface,
as well as framed photos of famous gangsters such as Al Capone.  Further, there
were several framed photos of the appellant posing with friends, some of whom
it was said were showing gang signs.  The state also showed a bandana found in
the appellant=s bedroom.  This bandana featured writing which Deputy
Jesse Ortiz testified was related to a recognized local gang.  But there was no
evidence presented to establish that the shooting in question was in any way
gang-related.








The State also presented evidence of possible drug use. 
Specifically, the State presented a plastic bag with a green, leafy substance
described as smelling like marijuana, as well as another plastic bag containing
a white powdery substance.  Further, the State presented scales and empty
plastic bags discovered in the bedroom.  On cross-examination,  Deputy Ortiz
admitted that the substances in the bags were never chemically analyzed, so it
was impossible for him to conclusively state what they were.  Further, there
was no evidence presented that the shooting in question was in any way related
to illegal drugs.

After reviewing this evidence and the record as a whole, we
conclude that the appellant did not suffer egregious harm by the trial court=s failure to
supply a reasonable-doubt instruction during the punishment phase.  As the
error in this case affects neither the basis of the case nor a defense theory,
and does not deprive the appellant of a valuable right, egregious harm can be
found to exist only if the  presentation of this evidence in the absence of the
required charge makes the case for punishment clearly and significantly more
persuasive.  See Saunders, 817 S.W.2d at
692; Matthews v. State, 999 S.W.2d 563,
565 (Tex. App.CHouston [14th Dist.] 1999, pet.  ref=d).  Our analysis
of this question is guided by the fact that the appellant=s trial counsel
effectively challenged the probative weight of this extraneous-offense and
bad-act evidence.  Further, the State did not refer to it in its closing
argument.  When discussing the range of punishment, the State did not mention
the alleged extraneous offenses at all; instead the State focused on the danger
that the appellant posed to the community as represented by the offense which
had already been proven beyond a reasonable doubtCmurder.  Finally,
there is nothing in the record to demonstrate that the jury was in any way
influenced by the evidence of extraneous offenses and bad acts.  








Moreover, the range of punishment for murder was
confinement from five to ninety-nine years, and a fine of up to $10,000.  See
Tex. Penal Code Ann. ' 12.32(a), (b) (Vernon 2003).  The jury=s punishment
assessment, seventy-five years and a $10,000 fine, fell well below the maximum
punishment.  Given the totality of the evidence and the record as a whole, we
find the case for the punishment assessed was not made clearly and
significantly more persuasive by the error.   See Walton v. State, No.
14-06-00227-CR, 2007 WL 706582, at *3 (Tex. App.CHouston [14th
Dist.] Mar. 8, 2007, pet. ref=d) (mem. op., not designated for
publication), cert. denied, 128 S.Ct.  1710 (2008); Burrow v. State,
No.  14‑04‑00425‑CR, 14‑04‑00426‑CR, 2005
WL 3116296, at *2B3 (Tex. App.CHouston [14th
Dist.] Nov. 23, 2005, pet. ref=d) (mem. op., not designated for
publication).  We overrule the appellant=s second issue.   

C.      Admission
of Evidence in Punishment Phase

The appellant=s third issue is
that the trial court erred in admitting certain evidence during the punishment
phase of the trial.  Specifically, the appellant contends that the trial court
should not have admitted several photographs taken of his bedroom, including
posters of criminal characters such as Scarface, Al Capone, Pablo Escobar, and
Bonnie and Clyde.  The appellant argues that these photographs were irrelevant
to the punishment proceedings as there was no credible evidence to support the
associated inference that he was part of a gang, or engaged in gang-related
activity.      

Generally, we review a trial court=s admission of
evidence under an abuse-of-discretion standard.  Walters v. State, 247
S.W.3d 204, 217 (Tex. Crim. App. 2007).  A trial court does not abuse its
discretion if its evidentiary ruling was within the Azone of reasonable
disagreement,@ and was correct under any legal theory applicable to
the case.  Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App.
2007); Bargas v. State, 252 S.W.3d 876, 889 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  Thus, because the trial court is usually in the best
position to decide whether evidence should be admitted or excluded, we must
uphold its ruling unless its determination was so clearly wrong as to lie
outside the zone within which reasonable persons might disagree.  See
Winegarner, 235 S.W.3d at 790; Hartis v. State, 183 S.W.3d 793, 801B02 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).








After a defendant has been found guilty, the State may
present evidence during the punishment phase of the trial demonstrating the
defendant=s general reputation and character.  See Tex.
Code Crim. Proc. Ann. art. 37.07 _ 3(a)(1).  A trial court may admit
evidence regarding a defendant=s alleged gang membership as a basis for
assisting the jury to assess a proper punishment.  See Beasley v. State,
902 S.W.2d 452, 456B57 (Tex. Crim. App. 1995); Aguilar v.
State, 29 S.W.3d 268, 270 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (gang membership is admissible at punishment phase of
trial as character evidence).  The relevance of gang membership depends upon
whether the jury receives enough information to make evidence about such
membership useful to its determination.  To prove relevance of a defendant=s membership in a
gang, the State must offer proof of (1) the gang=s violent and
illegal activities; and (2) the defendant=s membership in
the gang.  Barracks v. State, No. 14-07-00625-CR, 2008 WL 2838099, at *4
(Tex. App.CHouston [14th Dist.] July 22, 2008, pet.  ref=d) (mem.  op., not
designated for publication); Reyes v. State, No. 14‑03‑00414‑CR,
2004 WL 1171766, at *5 (Tex. App.CHouston [14th
Dist.] May 27, 2004, no pet.) (mem. op., not designated for publication); see
also Mason v. State, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995).

The appellant objected to the relevance of the photos at
trial, and now contends that the photos were not probative of his character
because they failed to demonstrate his actual membership in any gang, or his
participation in any particular gang=s activities, so
as to assist the jury in tailoring an appropriate sentence. See Beasley,
902 S.W.2d at 457.  The appellant correctly points out that there was inadequate
proof to establish his actual membership in a gang.  Nor was there any evidence
to attribute specific violent or illegal activities to any specific gang.  We
agree that the trial court erred in admitting the gang‑related evidence.








But having determined that the trial court erred in
admitting the photos, we must also conduct a harm analysis to determine if such
error was reversible.  The appellant stipulates in his brief that this issue
involves nonconstitutional error.  We must disregard nonconstitutional errors
that do not affect the substantial rights of the defendant. Tex. R. App. P.
44.2(b).  Substantial rights are not affected by the erroneous admission of
evidence if the appellate court, after examining the entire record, is assured
the error did not influence the jury=s decision or only
influenced it slightly.  See Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  If there is no influence or only a slight effect on the finder of fact,
reversal is not required.  See Johnson v. State, 43 S.W.3d 1, 4 (Tex.
Crim. App. 2001). AIn assessing the likelihood that the jury=s decision was
adversely affected by the error, the appellate court should consider everything
in the record, including any testimony or physical evidence admitted for the
jury=s consideration,
the nature of the evidence supporting the verdict, the character of the error,
and how it might be considered in connection with other evidence in the case.@ Motilla,
78 S.W.3d at 355; see also Reyes, 2004 WL 1171766, at *7 (AIn considering
whether inadmissible evidence prejudiced appellant during the punishment phase,
we also look to the other evidence presented, such as prior convictions, bad
acts, and the nature of the crime committed.@). 

As discussed in association with the appellant=s second issue,
the appellant=s assessed punishment was well within the allowable
range.  In assessing punishment, the jury could have properly considered that
he had been convicted of murder by use of a firearm, that he possessed three
firearms and a substantial collection of ammunition at the time of the
shooting.  Moreover, the prosecutor=s central argument
during the punishment phase concerned the danger that the appellant posed to
society.  Finally, the appellant=s trial counsel
effectively demonstrated on cross-examination that there was no direct proof of
the appellant=s inferred gang membership.  In consideration of these
facts, we are not convinced that the trial court=s erroneous
admission of the these photographs influenced the jury=s assessment of
the appellant=s punishment at all.  Consequently, we hold that the
trial court=s error in this case was harmless, and therefore not
reversible.  See Johnson, 43 S.W.3d at 4.  We overrule the appellant=s third issue.   D. 
          Ineffective Assistance of Counsel

The appellant=s fourth issue is
that he was denied his right to the effectiveness of counsel guaranteed by the
Sixth Amendment.  He contends that his trial counsel performed deficiently by
(1) failing to object to the testimony of two undesignated expert witnesses,
and (2) failing to request a jury instruction on the State=s burden of proof
as to extraneous offenses and bad acts during the punishment phase of the
trial. 








In reviewing claims of ineffective assistance of counsel,
we apply a two‑prong test. See Salinas v. State, 163 S.W.3d 734,
740 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466 U.S.
668, 687 (1984)).  To establish ineffective assistance, the appellant must
prove by a preponderance of the evidence that (1) his trial counsel=s representation
fell below the standard of prevailing professional norms, and (2) there is a
reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different.  Id.

When evaluating a claim of ineffective assistance, the
appellate court looks to the totality of the representation and the particular
circumstances of each case. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  When determining the validity of an ineffective‑assistance
claim, any judicial review must be highly deferential to trial counsel and
avoid the distorting effects of hindsight.  Ingham v. State, 679 S.W.2d
503, 509 (Tex. Crim. App. 1984) (citing Strickland, 466 U.S. at 689).  
There is a strong presumption that counsel=s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740 (citing Mallet v. State, 65 S.W.3d at 59, 63 (Tex. Crim. App.
2001)).  To overcome the presumption of reasonable professional assistance, A[a]ny allegation
of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Thompson,
9 S.W.3d at 814. 

1.       Nondisclosed
Expert Witnesses

The appellant=s first asserted
instance of ineffective assistance relates to the admission of testimony from
two of the State=s witnesses at trial.  The appellant
claims that his trial counsel failed to object to testimony from Deputy Bradley
Burns and Deputy Jesse Ortiz, despite the State=s failure to
disclose their status as potential expert witnesses. 








The State is required to disclose anticipated expert
witnesses upon the filing of a motion to compel disclosure by the defendant.  Stoker
v.  State, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989), disapproved on other
grounds, Leday v. State, 983 S.W.2d 713 (Tex. Crim. App. 1998).  The
record indicates that the appellant=s trial counsel
filed such a motion.  In response, the State filed two lists of expert
witnesses.  Deputy Ortiz=s name appeared on the first list, with
crime-scene investigation as his area of expertise.  Deputy Burns was not named
on either list.  During the guilt phase of the trial, Deputy Burns gave expert
testimony related to the mechanics of firearms, general forensic ballistics
testing, and specific ballistics tests performed on the firearms seized in this
case.  During the punishment phase of the trial, Deputy Ortiz gave expert
testimony related to gang culture and the identity of certain gangs.  Counsel
failed to object to such testimony by either witness.

The appellant does not argue that his trial counsel should
have objected to either Deputy Burns=s or Deputy Ortiz=s qualifications
as experts in their respective fields, or to any specific portion of their
testimony.  Consequently, our review relates only to the procedural notice
given regarding this testimony.

When the trial court allows a witness to testify who was
not on the list furnished to the defendant, the standard of review is abuse of
discretion.  Martinez v. State, 867 S.W.2d 30, 39 (Tex. Crim. App.
1993); Doherty v. State, 892 S.W.2d 13, 18 (Tex. App.CHouston [1st
Dist.] 1994, pet.  ref=d).  In determining abuse of discretion,
this court must look for bad faith in the prosecutor=s failure to
disclose the witness at an earlier time and whether the defendant could
reasonably anticipate that the witness would testify, even though that witness=s name was left
off the list.  Nobles v. State, 843 S.W.2d 503, 514B15 (Tex. Crim.
App. 1992); Doherty, 892 S.W.2d at 18. 

In determining whether the State acted in bad faith,
reviewing courts have examined at least two areas of inquiry: (1) whether the
defense shows that the State intended to deceive; see Nobles, 843 S.W.2d
at 515; and (2) whether the State=s notice left the
defense adequate time to prepare.  Id.








Similarly, in determining whether the defense could have
anticipated the State=s witness, reviewing courts have examined
three areas of inquiry: (1) the degree of surprise to the defendant; see
Nobles, 843 S.W.2d at 515; (2) the degree of disadvantage inherent in that
surprise (e.g., the defendant was aware of what the witness would say,
or the witness testified about cumulative or uncontested issues); see
Hernandez v. State, 819 S.W.2d 806, 816 (Tex. Crim. App. 1991); and (3) the
degree to which the trial court was able to remedy that surprise (e.g.,
by granting the defense a recess, postponement, or continuance, or by ordering
the State to provide the witness=s criminal
history).  See Hernandez, 819 S.W.2d at 816; Stoker, 788 S.W.2d
at 15; Richardson, 744 S.W.2d at 77.

The record indicates that Deputy Ortiz was named as a
potential expert witness in the State=s notice to the
court dated August 8, 2007.  The appellant contends that this notice was
insufficient as Deputy Ortiz was not designated as an expert on gangs.  But
neither the court=s order nor any other authority required
the State to identify the scope of the designated witnesses= testimony.  See
Tex. Code Crim. Proc. Ann. art. 39.14(b) (Vernon 2005 & Supp. 2008). 
The State met the requirements of both the court=s order and the
relevant statute by providing Deputy Ortiz=s name as well as
his address by reference.  There was no error in admitting Deputy Ortiz=s testimony.








Deputy Burns, by contrast, was not named in either of the
State=s
witness-disclosure lists.  In these two lists, the State disclosed twenty named
expert witnesses, and one unnamed potential AFingerprint
Expert.@  Among the
twenty-one witnesses, eight were designated as AHomicide
Detectives,@ five as ACrime Scene
Investigators,@ three as AForensic Chemists,@ and two as AGang Unit and
Disruptive Group@ experts.  There is nothing in the record
to show that the appellant=s trial counsel learned of the State=s intention to
call Deputy Burns, or any expert on firearms and ballistics, until Deputy Burns
took the witness stand.  While this fact, in and of itself, is not definitive
evidence of bad faith by the State in this case, there is also nothing in the
record to demonstrate that the appellant=s counsel could
have anticipated such testimony.   Consequently, we hold that it would have
been an abuse of discretion for the trial court to admit the expert testimony
of Deputy Burns had the appellant=s attorney
objected to the State=s failure to disclose the witness.  For
the purposes of this issue, we will presume that defense counsel=s failure to
object satisfies the first prong of the Strickland test.

If a criminal defendant can prove that trial counsel=s performance was
deficient, he must still affirmatively prove he was prejudiced by counsel=s actions.  Bone
v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  This requires the
defendant to demonstrate a reasonable probability that the result of the
proceeding would have been different if trial counsel had acted professionally.
 Strickland, 466 U.S. at 693; Bone, 77 S.W.3d at 833; Wade v. 
State, 164 S.W.3d 788, 795 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  A reasonable probability is a probability sufficient to
undermine confidence in the outcome. Strickland, 466 U.S. at 693; Bone,
77 S.W.3d at 833.

Reviewing the evidence presented by the State, absent the
expert testimony of Deputy Burns, we are not convinced that the outcome would
have been different.  Assistant Medical Examiner Sara Doyle testified that the
complainant died as a result of a gunshot wound.  In his recorded custodial
statement, the appellant admitted to firing a handgun out the window of Ramirez=s Expedition in
the direction of the deceased complainant and other young men with him. 
Chavarria testified that he observed the appellant fire the first shot, and
that the appellant was pointing the gun at the group of young men.  Chavarria
testified that heard the appellant fire three to four shots.  Chavarria also
testified that, upon returning to the appellant=s home, the
appellant told him to take his gunCthe same gun that
Chavarria had seen the appellant fire out the window of the ExpeditionCand hide it in the
appellant=s bedroom.  Deputy Palacios testified that he
discovered the same handgun in the appellant=s room.  Based on
this evidence alone, the jury could have convicted the appellant of murder. 
Consequently, the deficient conduct of the appellant=s trial counsel
did not prejudice him.  Strickland, 466 U.S. at 693; Bone, 77
S.W.3d at 833.    








2.       Burden of
Proof for Extraneous Offenses and Bad Acts

In the second part of his ineffective-assistance issue, the
appellant contends that his trial counsel performed deficiently by failing to
request a jury instruction on the State=s burden of proof
related to evidence of extraneous offenses and bad acts introduced during the
punishment phase of the trial.  As we have already discussed above, the trial
court erred in failing to provide an instruction on the burden of proof in this
instance.  Huizar, 12 S.W.3d 484.  In this case, however, the trial
court=s error was
harmless.  We must now review whether the conduct of the appellant=s trial counsel in
this matter qualifies as deficient and prejudicial.

This court has previously held that while the jury may not
consider extraneous-offense evidence unless it believes beyond a reasonable
doubt that the defendant committed the extraneous offense, the failure to
request such an instruction is not ineffective assistance of counsel.   Duong
v. State, No.  14-97-00387-CR, 14‑97‑00390‑CR, 14‑97‑00392‑CR,
1999 WL 587760, at *4 (Tex. App.CHouston [14th
Dist.] Aug. 5, 1999, pet.  ref=d) (not designated for publication)
(citing  Huizar v.  State, 966 S.W.2d 702, 706 (Tex. App.CSan Antonio 1998),
rev=d on other grounds, 12 S.W.3d 479
(Tex. Crim. App. 2000); Yates v. State, 917 S.W.2d 915, 924 (Tex. App.CCorpus Christi
1996, pet. ref=d); Poole v. State, 974 S.W.2d 892, 903 (Tex.
App.CAustin 1998, no
pet.).  Having reviewed the record of the appellant=s trial as a
whole, we cannot conclude that he was denied a fair and impartial trial.  The
appellant=s trial counsel vigorously cross-examined many of the
State=s witnesses, and
challenged the admission of several pieces of evidence.  In every other
respect, the appellant=s trial counsel afforded reasonably
effective assistance of counsel.  Consequently, we hold that the appellant=s trial counsel=s failure to
request a jury instruction on the State=s burden of proof
during the punishment phase of the trial does not overcome the strong
presumption of reasonable professional assistance.  See Burrow v. State,
No.  14‑04‑00425‑CR, 14‑04‑00426‑CR, 2005
WL 3116296, at *4 (Tex. App.CHouston [14th Dist.] Nov. 23, 2005, pet. 
ref=d) (mem. op., not
designated for publication).








Even if
we did hold that the appellant=s counsel had acted deficiently, there is still no Areasonable probability@ that the outcome would have been
different had counsel performed differently.  Strickland, 466 U.S. at
693; Bone, 77 S.W.3d at 833.  The appellant had already been convicted
of murderCin this case, the violent shooting of an unknown person in the back. 
Evidence of the appellant=s personal arsenal of weapons and ammunition had already been
presented during the guilt phase of the trial.  The punishment evidence to
which the appellant objectsCphotos of gangsters and possible gang affiliationsCwas never mentioned by the State in
its jury argument.  Although the jury=s sentence was at the upper end of
the punishment range, it was still well below the maximum allowed.  Based on
the trial record and the sentence assessed by the jury, we cannot say that, but
for trial counsel=s actions, the outcome would have been different.  See
Strickland, 466 U.S. at 693; Bone v. State, 77 S.W.3d at 833; see
also Arriaga v. State, No.  03-05-00104-CR, 2008 WL 2065973, at *6 (Tex.
App.CAustin May 14, 2008, no pet.) (mem. 
op., not designated for publication) (not reasonably probable that jury=s punishment would have been
different had appellant=s counsel succeeded in having missing instruction added to
punishment charge); Hudson v. State, No.  03-04-00733-CR, 2006 WL
2380403, at *12 (Tex. App.CAustin Aug.  18, 2006, no pet.)  (mem.  op., not designated
for publication); Batiste v. State, 73 S.W.3d 402, 409 (Tex. App.CDallas, 2002, no pet.); Canchola
v. State, No.  05-00-01783-CR, 05-00-01784-CR, 2001 WL 1464494, at *4 (Tex.
App.CDallas Nov.  19, 2001, no pet.) (not
designated for publication).  We overrule the appellant=s fourth issue.

Conclusion

Having overruled the appellant=s four issues, we
affirm the trial court=s judgment.

 

/s/      Jeffrey V. Brown

Justice

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P.
47.2(b).